1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

DANIEL J. BULFER,

                                    Plaintiff,

        vs.

PATRICK DOBBINS, DAVID ISLEY,
MANUEL GARCIA, et al.,

                                    Defendants.

CASE NO. 09-CV-1250 JLS (POR)

**ORDER: (1) GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT;
(2) DENYING PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

(Doc. Nos. 13, 14)

      Presently before the Court are Plaintiff's motion for partial summary judgment (Doc. No. 13) and Defendants' motion for summary judgment or, in the alternative, partial summary judgment (Doc. No. 14). Also before the Court are the parties' respective oppositions and replies. (Doc. Nos. 16 (Pl.'s Opp'n), 17 (Defs.' Opp'n), 18 (Defs.' Reply), 19 (Pl.'s Reply).) Having reviewed the parties arguments and the law, the Court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motion.

## BACKGROUND

      On April 19, 2008, Plaintiff Daniel J. Bulfer (Plaintiff) attended a dance on the campus of the University of California San Diego (UCSD). (Doc. No. 1 (Compl.) ¶ 6.) Plaintiff drove to the UCSD campus. (Doc. Nos. 14-3 to -11 (De La Cruz Decl. ISO MSJ) Ex. B (Bulfer Dep.), at 33.) Before entering the dance, Plaintiff drank vodka and orange juice in his car. (*Id.* at 26, 30–33; Doc. Nos. 13-2

to -6 (Marrinan Decl. ISO MSJ) Ex. 1 (Bulfer Dep.),[1] at 35–37.) Plaintiff drank between thirty-five and forty-five percent of a bottle of vodka. (Bulfer Dep. at 34–35, 37; Doc. No. 17-1 (Bulfer Decl.) ¶ 5.) Plaintiff then proceeded to the dance. (*See* Compl. ¶ 7.)

At about 11:15 p.m, Plaintiff and his friend, Cody Harrison, left the dance to talk in Plaintiff's car. (Compl. ¶ 7; Bulfer Dep. 41.) When they got to the car, Plaintiff sat in the driver's seat and Mr. Harrison sat in the passenger's seat. (Compl. ¶ 7.) Plaintiff and Mr. Harrison talked and listened to a CD for about an hour. (Bulfer Dep. 41–43.)

Meanwhile, Defendant Patrick Dobbins (Officer Dobbins), a patrol officer with the UCSD Police Department, was on vehicle patrol. (Marrinan Decl. ISO MSJ Ex. 2 (Dobbins Dep.),[2] at 57.) At about 12:30 a.m. on April 20, 2008, Officer Dobbins noticed a parked car with its taillights illuminated. (Compl. ¶ 8; Dobbins Dep. 57.) Officer Dobbins parked at the far end of the parking lot to observe the car. (Dobbins Dep. 61–62.) After about five minutes, Officer Dobbins approached the car and knocked on the driver's window. (Compl. ¶ 8; Bulfer Dep. 54; Dobbins Dep. 61–62, 67–68, 71–72.) Plaintiff opened the car door, and Officer Dobbins asked whether Plaintiff and his passenger, Mr. Harrison, were okay. (Compl. ¶ 9; Bulfer Dep. 57–58; Dobbins Dep. 72.) Plaintiff explained that he and Mr. Harrison were sitting in the car to allow Mr. Harrison time to calm down after an unpleasant incident in the dance. (Compl. ¶ 9; Bulfer Dep. 57–58; Dobbins Dep. 72–73.)

Because he smelled alcohol, Officer Dobbins asked whether Plaintiff had been drinking. (Compl. ¶ 9; Bulfer Dep. 57–58; Dobbins Dep. 73.) Plaintiff responded in the affirmative. (Compl. ¶ 9; Bulfer Dep. 58; Dobbins Dep. 76.) Officer Dobbins suspected Plaintiff of driving under the influence and, accordingly, asked Plaintiff to step out of the car for a field sobriety test. (Compl. ¶ 10; Dobbins Dep. 77–79.) Based on Plaintiff's performance during the field sobriety test, Officer Dobbins determined that Plaintiff was impaired by alcohol. (Compl. ¶ 10; Dobbins Dep. 86.) Officer Dobbins

---

[1] Plaintiff and Defendants have submitted portions of Plaintiff's deposition in support of their respective motions. (*See also* Doc. No. 18-1 (De La Cruz Decl. ISO Reply) Ex. A (Bulfer Dep.).) The Court refers to these exhibits, collectively, as "Bulfer Dep."

[2] The Court's citations to Officer Dobbins's deposition refer to the complete copy submitted in support of Plaintiff's motion. Defendants have also submitted portions of Officer Dobbins's deposition in support of their motion. (*See* De La Cruz Decl. ISO MSJ Ex. C (Dobbins Dep.).) The Court refers to these exhibits, collectively, as "Dobbins Dep."

asked Plaintiff to take a preliminary alcohol screening test, but Plaintiff refused. (Compl. ¶ 10; Bulfer Dep. 86–87; Dobbins Dep. 86–87.) At that point, Officer Dobbins placed Plaintiff under arrest for driving under the influence of alcohol and placed him in a patrol car. (Compl. ¶ 10; Bulfer Dep. 86–87; Dobbins Dep. 87–88.)

During Officer Dobbins's contact with Plaintiff, Defendants Manuel Garcia (Corporal Garcia), a corporal with the UCSD Police Department, and David Isley, a sergeant with the UCSD Police Department, arrived on the scene. (Marrinan Decl. ISO MSJ Ex. 4 (Garcia Dep.),[3] at 20, 23; De La Cruz Decl. ISO MSJ Ex. E (Isley Dep.), at 5, 22.) While Officer Dobbins was evaluating Plaintiff, Sergeant Isley walked around Plaintiff's car. (Isley Dep. 29.) Through the driver's side window, Sergeant Isley saw a knife in a sheath wedged between the door and the driver's seat. (*Id.* 29–30.)

After Officer Dobbins placed Plaintiff under arrest, Corporal Garcia offered to secure Plaintiff's car. (Garcia Dep. 48.) Officer Dobbins asked Corporal Garcia to secure the car, and Corporal Garcia went to the car to look for the keys. (*Id.* at 48–49.) The keys were not in the ignition, so Corporal Garcia looked around the car's passenger compartment for one to two minutes. (*Id.* at 49–51.) While he was looking for the keys, Corporal Garcia noticed orange juice containers and an alcohol bottle on the passenger's side floor board. (*Id.* at 52–54.) Corporal Garcia removed the bottles from the car and notified Officer Dobbins of his discovery. (*Id.* at 54–56.) After Corporal Garcia removed the bottles from the car, Sergeant Isley directed Corporal Garcia to check the driver's side floorboard. (*Id.* at 57, 61; *see* Isley Dep. 71.) On inspection of the driver's side floorboard, Corporal Garcia found a knife in a sheath. (Garcia Dep. 58–60.) Corporal Garcia eventually turned the knife and the bottles over to Officer Dobbins to be processed and entered into evidence. (*Id.* at 62–63.)

Plaintiff was taken into custody and booked into county jail. (Compl. ¶ 13.) Plaintiff was later arraigned on misdemeanor charges of possession of a knife on a university campus, *see* Cal. Penal Code § 626.10(b), and driving under the influence, *see* Cal. Veh. Code § 23152. (Compl. ¶ 14; Bulfer

---

[3]   As above, the Court's citations to Officer Garcia's deposition refer to the complete copy submitted in support of Plaintiff's motion. Defendants have also submitted portions of Officer Garcia's deposition in support of their motion. (*See* De La Cruz Decl. ISO MSJ Ex. D (Garcia Dep.).) The Court refers to these exhibits, collectively, as "Garcia Dep."

Dep. 100.)  Plaintiff was also referred to the DMV for possible sanctions.  (Compl. ¶ 14.)  The criminal and administrative charges against Plaintiff were later dismissed.  (Compl. ¶ 14; *see also* Bulfer Dep. 101; Bulfer Decl. ¶¶ 19–20.)

On June 9, 2009, Plaintiff filed this civil action against Defendants alleging violations of his Fourth Amendment rights, negligence, false arrest, and violation of California Civil Code section 52.1. (*See* Compl.)  Defendants answered Plaintiff's complaint on September 11, 2009.  (Doc. No. 3 (Answer).) On August 30, 2010, both parties moved for summary judgment.  (Doc. Nos. 13, 14.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id.* at 322–23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."  *Anderson*, 477 U.S. at 256.  When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co.*

1   *v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

2                                **DISCUSSION**

3         Plaintiff contends that he is entitled to summary judgment, as to liability only, on his federal

4   claim for unlawful seizure and his state law claim for false arrest.  (Doc. No. 13-1 (Pl.'s Mem. ISO

5   MSJ), at 9–16.)  Defendants, on the other hand, contend that they are entitled to summary judgment

6   on all of Plaintiff's claims.  (Doc. No. 14-1 (Defs.' Mem. ISO MSJ), at 6–24.)  The Court addresses

7   each claim in turn.

8   **1.       Federal Claim**

9         Plaintiff's federal claim under 42 U.S.C. § 1983 alleges that Defendants violated his Fourth

10  Amendment rights in three distinct ways.  (*See* Compl. ¶¶ 15–21.)  First, Plaintiff alleges that he was

11  unlawfully seized without a warrant or probable cause.  (Compl. ¶ 16.)  Second, Plaintiff alleges that

12  Defendants unlawfully searched his car.  (Compl. ¶ 17.)  Third, Plaintiff alleges that Defendants

13  caused him to be falsely charged with criminal violations and subjected to possible DMV sanctions.

14  (Compl. ¶ 18.)

15  ***A.     Legal Standards***

16  *(1)      42 U.S.C. § 1983*

17        42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law,

18  deprives another of any rights, privileges or immunities secured by the Constitution and laws of the

19  United States.  Section 1983 is not a source of substantive rights but merely a method for vindicating

20  federal rights established elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  To succeed

21  on a claim under § 1983, a plaintiff must show "(1) that a right secured by the Constitution or the laws

22  of the United States was violated, and (2) that the alleged violation was committed by a person acting

23  under color of State law."  *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

24  *(2)      Qualified Immunity*

25        Qualified immunity is a question of law.  *Johnson v. Cnty. of L.A.*, 340 F.3d 787, 791 (9th Cir.

26  2003); *Nunez v. Davis*, 169 F.3d 1222, 1229 (9th Cir. 2000).  Its basic purpose is "to spare individual

27  officials the burdens and uncertainties of standing trial in those instances where their conduct would

28  strike an objective observer as falling within the range of reasonable judgment."  *Gooden v. Howard*

*Cnty.*, 954 F.2d 960, 965 (4th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)).  The test for determining whether a defendant enjoys qualified immunity has two prongs: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right, and (2) was that constitutional right clearly established in the context faced by the defendant? *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If a plaintiff cannot make this showing, the official is entitled to qualified immunity.  *See Pearson*, 129 S. Ct. at 818.

**B.      Unlawful Seizure**

As to Plaintiff's unlawful seizure claim, the Court begins by determining whether Defendants, taking the facts in the light most favorable to Plaintiff, violated Plaintiff's constitutional rights. Specifically, the Court must determine whether Defendants' "actions [were] 'objectively reasonable' in light of facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

*(1)      Whether Officer Dobbins's Initial Contact with Plaintiff Was a Detention*

Plaintiff first argues that Officer Dobbins's initial contact with Plaintiff was an unconstitutional detention without reasonable suspicion.  (Pl.'s Mem. ISO MSJ 10–11; Pl.'s Opp'n 6–7; Pl.'s Reply 1–2.)  Defendants, on the other hand, contend that Plaintiff's detention was a consensual encounter for which no reasonable suspicion was required.  (Defs.' Mem. ISO MSJ 7; Defs.' Opp'n 4–5; Defs.' Reply 3–4.)

Police–citizen contact implicates the Fourth Amendment when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)); *see also United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances

surrounding the incident, a reasonable person would have believed that he was not free to leave."). However, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434; *accord Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . ."); *United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007) ("It is well established . . . that the Fourth Amendment is not implicated when law enforcement officers merely approach an individual in public and ask him if he is willing to answer questions."). "This is true whether an officer approaches a person who is on foot or a person who is in a car parked in a public place." *Washington*, 490 F.3d at 770.

If an officer merely walks up to a person who is seated in a car in a public place and asks him a question, this alone does not constitute a seizure. *See* 4 Wayne R. LaFave, *Search and Seizure* § 9.4(a) (4th ed. 2004). In *United States v. Kim*, 25 F.3d 1426, 1428 (9th Cir. 1991), DEA agents received a tip that an individual would be carrying a briefcase containing methamphetamine in a certain Honolulu neighborhood. An agent saw Kim and a companion exit from a shop carrying a suitcase and seat themselves in a parked car. *Id.* Responding to the first agent's call, another agent "parked his unmarked car so as to partially block the egress of Kim's vehicle." *Id.* The agent approached the driver's side door, identified himself, and asked the occupants for their identification. *Id.* The agent then asked the occupants to step out of the car for further questioning and received consent to search the suitcase. *Id.* After finding the suitcase empty, the agent noticed an unidentified object protruding from Kim's pocket. *Id.* at 1428–29. Kim turned the object over to the agent, who determined that the object contained methamphetamine. *Id.* at 1429.

On appeal, Kim contended that the methamphetamine that the agent seized was the product of an unlawful investigatory stop. *Id.* The Ninth Circuit disagreed and held that "the contact between DEA agents and Kim . . . did not rise to the level of an investigatory stop," *id.* at 1429, because the agents did not act forcefully or aggressively toward Kim, *id.* at 1430. Nor did the encounter rise to the level of a stop because the agents partially blocked Kim's egress with his automobile. *Id.* at 1431 & n.2. Although the court was "mindful that police interrogation of automobile occupants typically

1   involves a greater degree of intrusiveness than questioning of pedestrians," the court held that

2   "where . . . officers come upon an already parked car, this disparity between automobile and

3   pedestrian stops dissipates . . . ." *Id.* at 1430.

4          Following *Kim*, the Ninth Circuit held in *Washington* that suspicionless police questioning of

5   an individual in a parked car did not constitute a Fourth Amendment stop.  490 F.3d at 770.  The court

6   noted several factors in support of its conclusion: (1) that the officer parked his car a full car length

7   behind the individual's car so as not to block it,(2) that the officer did not touch his gun or baton

8   during the encounter, (3) that the officer did not brandish his flashlight as a weapon, (4) that the

9   officer approached the individual's car on foot, (5) that the officer's initial questioning was brief, and

10  (6) that the officer was cordial and courteous.  *Id.*  "Under these circumstances, the district court

11  correctly concluded that a reasonable person would have felt free to terminate the encounter and

12  leave."[4]  *Id.*; *see also United States v. Summers*, 268 F.3d 683, 687 (9th Cir. 2001) (holding that

13  interaction with occupant of a parked car did not rise to the level of a stop where car was partially

14  blocked, officer requested identification from individual, and officer asked for car's paperwork as a

15  way to identify the individual).

16         Here, the Court finds that Officer Dobbins's initial contact with Plaintiff did not rise to the

17  level of a constitutional seizure.  As in *Kim* and *Washington*, Officer Dobbins only partially blocked

18  Plaintiff's car.  (*See* De La Cruz Decl. ISO Reply Ex. B (diagram by Plaintiff depicting the locations

19  of Plaintiff's and Officer Dobbins's cars during the encounter).)  Officer Dobbins approached the

20  driver's side of Plaintiff's car on foot, identified himself, and asked Plaintiff two questions—whether

21  Plaintiff was okay and whether Plaintiff had been drinking.  (Compl. ¶ 9; Bulfer Dep. 57–58; Dobbins

22

23         [4] As the Ninth Circuit noted in *Kim*, "other circuits in factually similar cases have consistently
    held that an officer's approach of a car parked in a public place does not constitute an investigatory
24  stop or higher echelon Fourth Amendment seizure." 25 F.3d at 1430 n.1; *see, e.g.*, *United States v.
    Griffith*, 533 F.3d 979, 983 (8th Cir. 2008) (affirming district court finding that encounter with
25  individuals in parked car did not constitute stop where officers did not impede individual's ability to
    drive away, did not draw their weapons, and did not demand that individuals comply with
26  investigation); *United States v. Williams*, 413 F.3d 347, 352 (3d Cir. 2005) ("[T]here was no seizure
    because there was no use of physical force, nor was there any show of authority when the police
27  approached the van in their marked cruiser, exited their vehicle, and approached the parked van on
    foot."); *Latta v. Keryte*, 118 F.3d 693, 700–01 (10th Cir. 1997) (finding no seizure where officer
28  approached parked car, asked occupant whether he was okay and to get out of the car, and asked for
    occupant's identification).

Dep. 72–73.)  Officer Dobbins did not brandish his flashlight as a weapon, touch his gun or baton, or otherwise act forcefully or aggressively toward Plaintiff.  Rather, Officer Dobbins was "generally professional" during his encounter with Plaintiff.  (Bulfer Dep. 88; *see also id.* at 88–89 (stating that nothing about Officer Dobbins's behavior was "abusive in nature").)  Plaintiff could have terminated the encounter by opening his door and walking away. (*See id.* at 62 (stating that, during the encounter, Officer Dobbins stood "to the rear of" Plaintiff's door).)  Under these circumstances, "a reasonable person would have felt free to terminate the encounter and leave."[5] *Washington*, 490 F.3d at 770; *see also United States v. Robson*, 2007 WL 3232524, at *4 (D. Nev. Oct. 30, 2007) ("Raynolds approached Robson who was seated in a parked vehicle in a public place.  Since there is nothing in the record to suggest that Raynolds used physical force or show of authority to restrict Robson's liberty, Robson was objectively free to leave.").

No genuine issue of material fact exists regarding whether Officer Dobbins's initial contact with Plaintiff was a detention.  Accordingly, Plaintiff's constitutional rights were not violated by Officer Dobbins's initial contact with Plaintiff.

*(2)   Whether Reasonable Suspicion Existed to Warrant Detention of Plaintiff for a Field Sobriety Test*

Plaintiff next argues that a triable issue of fact exists regarding whether reasonable suspicion supported Officer Dobbins's detention of Plaintiff for a field sobriety test.  (Pl.'s Mem. ISO MSJ 11; Pl.'s Opp'n 7–8; Pl.'s Reply 2–3.)  Defendants, however, contend that Officer Dobbins had reasonable

---

[5]  Plaintiff makes two statements in his declaration in opposition to Defendants' motion that contradict his earlier deposition testimony on factual issues relevant to whether Officer Dobbins's initial contact with Plaintiff constituted a detention.  (*See, e.g.*, Bulfer Decl. ¶ 8 ("[I]f I had attempted to drive away[,] I would have been unable to pull out of the parking stall without colliding with the police car."); *id.* ¶ ("I observed [Officer Dobbins] standing just outside my driver['s] door (within inches) in such a way as to prevent me from exiting the car.").)  This testimony, if considered, would create a genuine issue of material fact that would preclude summary judgment. *See, e.g.*, *Goines v. United States*, 964 A.2d 141, 145 (D.C. 2009) ("Certainly, the appellant was seized when the police took her keys and blocked her car."); *People v. Gherna*, 784 N.E.2d 799, 808 (Ill. 2003) (holding that seizure of car's occupants occurred where positioning of officers and their bicycles on both sides of car "prevented defendant from either exiting the vehicle or driving the vehicle away from the scene"); *Hawkins v. United States*, 663 A.2d 1221, 1225–26 (D.C. 1995) (holding that seizure of car's occupant occurred where, *inter alia*, officers positioned themselves on both sides of car).  However, the Court will not consider Plaintiff's statements in his declaration because they contradict his earlier deposition testimony. *See Block v. City of L.A.*, 253 F.3d 410, 419 n.2 (9th Cir. 2001) ("A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts.").

suspicion to detain Plaintiff for a field sobriety test. (Defs.' Mem. ISO MSJ 7–8; Defs.' Opp'n 4–5.)

Initially, the Court finds that Plaintiff was seized when Officer Dobbins asked him to step out of the car for a field sobriety test. From that point, a reasonable person in Plaintiff's position would not have felt free to ignore Officer Dobbins and go about his business. *Bostick*, 501 U.S. at 437. This detention was unconstitutional unless reasonable suspicion supported it. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Thompsen v. Breshears*, 2009 WL 2581556, at *6 (E.D. Wash. Aug. 14, 2009) (holding that detention for field sobriety test requires reasonable suspicion).

The determination of whether the facts alleged could support a reasonable belief in the existence of reasonable suspicion is a question of law. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). "Police may detain or seize an individual for brief, investigatory purposes, provided that the officers making the stop have reasonable suspicion 'that criminal activity may be afoot.'" *United States v. Johnson*, 581 F.3d 994, 999 (9th Cir. 2009) (quoting *United States v. Orman*, 486 F.3d 1170, 1173 (9th Cir. 2007)). "Reasonable suspicion 'is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Thompson*, 282 F.3d 673, 678 (9th Cir. 2002) (quoting *United States v. Rojas-Millan*, 234 F.3d 464, 468–69 (9th Cir. 2000)). In determining whether reasonable suspicion exists, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well evade an untrained person.'" *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274 (citations omitted).

Here, the Court finds that reasonable suspicion existed to warrant detention of Plaintiff for a field sobriety test. When Officer Dobbins noticed Plaintiff's car, the car's taillights were on. (Dobbins Dep. 57.) During his initial contact with Plaintiff, Officer Dobbins noticed that the keys were in the car's ignition, the dash lights were illuminated, and the radio was playing. (*Id.* at 83.) During his initial contact with Plaintiff, Officer Dobbins smelled alcohol, and Plaintiff admitted to

1   having consumed alcohol earlier in the evening.  (Compl. ¶ 9; Bulfer Dep. 58; Dobbins Dep. 76.)

2   Viewed as a whole in light of a trained officer's experience, the circumstances here support a finding

3   of reasonable suspicion that criminal activity was afoot.  Officer Dobbins articulated specific facts

4   sufficient to form a basis for a reasonable suspicion that Plaintiff was violating San Diego Municipal

5   Code section 85.10 (section 85.10)[6,7] or had recently violated California Vehicle Code section 23152

6   (section 23152).[8]  Thus, Officer Dobbins's detention of Plaintiff was objectively reasonable in light

7   of the facts and circumstances confronting him.  *Graham*, 490 U.S. at 397.

8          No factual dispute exists regarding the circumstances that gave rise the to reasonable suspicion

9   necessary to briefly detain Plaintiff to investigate a potential violations of section 85.10 and section

10   23152.  Accordingly, Plaintiff's constitutional rights were not violated when he was detained for a

11   field sobriety test.

12   *(3)*     *Whether Probable Cause Supported Plaintiff's Arrest*

13          Plaintiff also argues that Officer Dobbins lacked probable cause to arrest Plaintiff, and

14   therefore, Plaintiff's arrest was unlawful.  (Pl.'s Mem. ISO MSJ 11–14; Pl.'s Opp'n 8–16; Pl.'s Reply

15   3–9.)  Defendants, on the other hand, contend that Plaintiff's arrest was supported by probable cause.

16   (Defs.' Opp'n 5–8.)

17          "Under the Fourth Amendment, a warrantless arrest requires probable cause."  *United States*

---

18

19         [6] Under section 85.10, "No person who is under the influence of intoxicating liquor or narcotic drugs shall be in or about any motor vehicle, while such vehicle is in or upon any street or other public place."  San Diego, Cal. Mun. Code ch. 8, art. 5, § 85.10 [hereinafter § 85.10].

20

21         [7] Plaintiff argues that Officer Dobbins could not have used section 85.10 as a basis for Plaintiff's detention and subsequent arrest because section 85.10 is unconstitutionally vague and preempted by California law.  (*See* Pl.'s Opp'n 8–13; Pl.'s Reply 3–8.)  The Court addresses this

22   argument *infra*.

23         [8] Under section 23152(a), "It is unlawful for any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to

24   drive a vehicle."  Cal. Veh. Code § 23152(a).  If Officer Dobbins had reasonable cause to believe Plaintiff had been driving under the influence, California Vehicle Code section 40300.5(e) authorized

25   his arrest.  *Id.* § 40300.5 ("[A] peace officer may, without a warrant, arrest a person when the officer has reasonable cause to believe that the person had been driving while under the influence of an

26   alcoholic beverage . . . when any of the following exists: . . . (e) The person may destroy or conceal evidence of the crime unless immediately arrested."); *see People v. Schofield*, 109 Cal. Rptr. 2d 429,

27   435 (Cal. Ct. App. 2001) ("Vehicle code section 40300.5 subdivision (e) creates an exception to the presence requirement of Penal Code section 836 because evidence will be destroyed *by the simple*

28   *passage of time* unless the person is arrested." (emphasis added)), *disapproved on other grounds in People v. Thompson*, 135 P.3d 3, 14 n.3 (Cal. 2006).

1   *v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  The determination of whether the facts alleged could

2   support a reasonable belief in the existence of probable cause is a question of law.  *Act Up!/Portland*,

3   988 F.2d at 873.  Probable cause to arrest exists if the arresting officers have knowledge or reasonably

4   trustworthy information sufficient to lead a prudent person to believe "that an offense has been or is

5   being committed by the person being arrested." *Lopez*, 482 F.3d at 1072; *accord Beck v. Ohio*, 379

6   U.S. 89, 91 (1964).  Although probable cause does not require conclusive evidence of guilt, "'mere

7   suspicion, common rumor, or even strong reason to suspect are not enough.'"  *Edgerly v. City & Cnty.*

8   *of S.F.*, 599 F.3d 946, 953 (9th Cir. 2010) (quoting *Lopez*, 482 F.3d at 1072).  As long as probable

9   cause exists at the time of the arrest, the arrest does not violate the Constitution even if the charges

10  are later dropped.  *DelCastillo v. City & Cnty. of S.F.*, 2010 WL 1838939, at *6 (N.D. Cal. May 3,

11  2010).

12      "Because the probable cause standard is objective, probable cause supports an arrest so long

13  as the arresting officers had probable cause to arrest the suspect for *any criminal offense*, regardless

14  of their stated reason for the arrest." *Edgerly*, 599 F.3d at 954 (emphasis added); *accord Devenpeck*

15  *v. Alford*, 543 U.S. 146, 153–55 (2004).  "Probable cause, however, must exist still exist under some

16  specific criminal statute.  It is therefore not enough that probable cause existed to arrest [the suspect]

17  for some metaphysical criminal offense; the [o]fficers must ultimately point to a particular statutory

18  offense." *Edgerly*, 599 F.3d at 954 (citations omitted).

19      Here, Defendants contend that probable cause existed to arrest Plaintiff for violation of section

20  85.10.  The Court agrees.  When Officer Dobbins arrested Plaintiff, he had abundant probable cause

21  to believe Plaintiff's conduct violated the terms of the ordinance.  Section 85.10 provides that a person

22  commits an offense if he is (1) "in or about [a] motor vehicle," (2) "in or upon any street or other

23  public place," and (3) "under the influence of intoxicating liquor." § 85.10.  Plaintiff does not dispute

24  that he was in a motor vehicle in a public place, and Plaintiff admitted to having consumed alcohol.

25  (*See* Compl. ¶¶ 7–9.)  Officer Dobbins's field sobriety test of Plaintiff confirmed Officer Dobbins's

26  suspicion that Plaintiff was impaired by alcohol.  (Dobbins Dep. 86.)  Under these circumstances, a

27  prudent person would have justifiably believed that Plaintiff had committed a completed violation of

28

section 85.10.[9]  Accordingly, Plaintiff's arrest was supported by probable cause.

Plaintiff contends that section 85.10 cannot be used to justify Plaintiff's arrest because it is preempted by state law and unconstitutionally vague.  (Pl.'s Opp'n 8–13; Pl.'s Reply 3–8.)  Clearly established Supreme Court law forecloses this argument.  In *Michigan v. DeFillippo*, 443 U.S. 31, 34 (1979), the respondent was arrested for violation of a Detroit city ordinance.  On interlocutory appeal, the Michigan Court of Appeals held that the ordinance under which the respondent was arrested was unconstitutionally vague.  *Id.*  Accordingly, the court remanded with instructions to suppress evidence seized during a search incident to the respondent's arrest and quash the information.  *Id.* at 34–35.  The state appealed.  *Id.* at 35.

The Supreme Court held that, at the time the respondent was arrested, "there was abundant probable cause to satisfy the constitutional prerequisite for an arrest."  *Id.* at 37.  The Court rejected the respondent's contention that the officer lacked probable cause because he should have known that the ordinance was invalid and would be declared unconstitutional.  *Id.*  At the time of the respondent's arrest:

> [T]here was no controlling precedent that [the] ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance.  A prudent officer, in the course of determining whether respondent had committed an offense under all the circumstances shown by [the] record, should not have been required to anticipate that a court would later hold the ordinance unconstitutional.

*Id.* at 37–38; *see also Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("[W]hen a city council has duly enacted an ordinance, police officers are ordinarily entitled to rely on the assumption that the council members have considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority.").  *But cf. Carey v. Nev. Gaming*

---

[9]  Defendants also contend that probable cause existed to arrest Plaintiff for violation of California Penal Code section 626.10(b) (section 626.10(b)), which makes it illegal for persons including Plaintiff to "bring[] or possess[] any dirk, dagger, ice pick, or knife having a fixed blade longer than 2 1/2 inches upon the grounds of, or within, any private university, the University of California, the California State University, or the California Community Colleges."  Cal. Penal Code § 626.10(b).  However, indulging every inference in Plaintiff's favor, a genuine issue of material fact exists regarding whether the knife was in plain view at the time of Plaintiff's arrest.  (*Compare* Isley Dep. 29–30 (stating that he saw the knife through the driver's door window), *with* Bulfer Dep. 44–47 (stating that he drove the car approximately twenty times without noticing the knife).)  If a jury were to believe Plaintiff's testimony, then it could conclude that the facts and circumstances known to Defendants at the time of Plaintiff's arrest did not establish probable cause to arrest Plaintiff for violation of section 626.10(b).

1     *Control Bd.*, 279 F.3d 873, 881 (9th Cir. 2002) ("Although state officials who rely on statutes are

2     generally presumed to act reasonably, an official may nevertheless be liable for enforcing a statute that

3     is 'patently violative of fundamental constitutional principles.'" (quoting *Grossman*, 33 F.3d at 1209)).

4         *DeFillippo* controls here. Even assuming, *arguendo*, that section 85.10 is preempted by state

5     law or unconstitutionally vague, Plaintiff has cited no controlling precedent, extant at the time of

6     Plaintiff's arrest, holding the that the ordinance is preempted by state law or unconstitutional.[10]

7     Officer Dobbins did not lack probable cause "simply because he should have known that the ordinance

8     was invalid and [might] be judicially declared unconstitutional." *DeFillippo*, 443 U.S. at 37.

9     Plaintiff's conduct violated a presumptively valid ordinance. Officer Dobbins had probable cause to

10    arrest him.

11        Plaintiff also argues that, even if probable cause existed to arrest Plaintiff for violation of

12    section 85.10, "he would nevertheless be entitled to recover for injuries he suffered which were

13    independent of those caused by the crime that justified his arrest." (Pl.'s Opp'n 15.) Thus, Plaintiff

14    "would be entitled to pursue his claim as to the false DUI charge and the false knife charge, and

15    recover any damages resulting therefrom." (*Id.* at 16.) In support of his contention, Plaintiff cites

16    *McKenzie v. Lamb*, 738 F.2d 1005, 1011 (9th Cir. 1984) (Kennedy, J.), in which the Ninth Circuit

17    held:

18          [A]ppellants may recover for other injuries caused by acts independent of their arrest
          even if the arrests are found to be supported by probable cause. For example,
19         appellants were charged with both [a misdemeanor and a felony]. The extra felony
          charge, if unjustified, may have caused injury independent of that caused by the
20         misdemeanor arrest.

21        The Court agrees with Plaintiff in the abstract. It is true that the driving under the influence

22    and California Penal Code section 626.10(b) charges, if unjustified, may have caused independent

23    injury. However, a *malicious prosecution* claim, rather than a *false arrest* claim, is the proper vehicle

24

25          [10] Because probable cause existed to arrest Plaintiff for violation of section 85.10 regardless of the ordinance's validity, the Court does not reach the issue of whether section 85.10 is *in fact*

26    preempted by state law, *see Meyer v. Cal. and Hawaiian Sugar Co.*, 662 F.2d 637, 640 (9th Cir. 1981) ("Federal courts should not reach out unnecessarily to decide state law claims.") (citing *United Mine*

27    *Workers v. Gibbs*, 383 U.S. 715, 726 (1966)), or unconstitutionally vague, *see Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 184 (1999) ("[W]e do not ordinarily reach out to

28    make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground."); *United States v. Withers*, 618 F.3d 1008, 1020 n.5 (9th Cir. 2010) (same).

through which to recover for injuries caused by unjustified criminal charges.  *See Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2000) (discussing elements of malicious prosecution claim under § 1983); *cf. Awabdy v. City of Adelanto*, 368 F.3d 1062, 1072 (9th Cir. 2004) ("In this circuit, nothing prevents [a plaintiff] from bringing *both* malicious prosecution claims and direct First and Fourteenth Amendment claims in the same § 1983 action.").  Put another way, that probable cause supported Plaintiff's arrest does not undermine Plaintiff's damages claims based on acts independent of his arrest.  Plaintiff is entitled to pursue—and is pursuing in this action—a malicious prosecution claim to recover for injuries caused by allegedly unsupported charges filed after his arrest.  But he cannot recover for these alleged injuries on a false arrest theory because Plaintiff's arrest was supported by probable cause.  *McKenzie* does not counsel otherwise.

Additionally, Plaintiff contends that, even if probable cause existed to arrest him for violation of section 85.10, he may still recover damages because state law does not authorize custodial arrest for violation of the ordinance.  (Pl.'s Opp'n 15.)  However, the constitutionality of Plaintiff's arrest does not depend on whether Officer Dobbins conducted it in accordance with state law.  *See Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990).  "Rather, the crucial inquiry is whether [Officer Dobbins] had probable cause to make the arrest."  *Id.*  Here, Officer Dobbins had probable cause to arrest Plaintiff for violation of section 85.10.  That state law did not authorize Plaintiff's arrest does not provide a basis for a § 1983 claim.

Because Plaintiff's arrest was supported by probable cause, Plaintiff's false arrest claim fails as to all Defendants.  *See McSherry v. City of Long Beach*, 584 F.3d 1129, 1136 (9th Cir. 2009).

*(4)     Conclusion*

For the reasons stated, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's unlawful seizure claim.  Concomitantly, Plaintiff's motion for partial summary judgment against Defendants on this claim is **DENIED**.

### C.     *Unlawful Search*

Defendants also argue that they are entitled to summary judgment on Plaintiff's unlawful search claim because "the officers had probable cause to search the car" and "the search was valid as a search incident to arrest."  (Defs.' Mem. ISO MSJ 13.)  Alternatively, Defendants argue that they

1    are entitled to qualified immunity on Plaintiff's unlawful search claim.  (Defs.' Mem. ISO MSJ 13–15;

2    Defs.' Reply 8.)  Plaintiff, however, contends that genuine issues of fact preclude summary judgment

3    on this claim.  (Pl.'s Opp'n 16–17.)

4            Here, the Court need not reach the question of whether Defendants' search of Plaintiff's car

5    violated the Fourth Amendment because the law prohibiting a search incident to arrest was not clearly

6    established when the search occurred.  Citing *Arizona v. Gant*, — U.S. —, 129 S. Ct. 1710 (2009),[11]

7    Plaintiff contends that "the search clearly violated the Fourth Amendment because [Plaintiff] was

8    secured in the police car at the time of the search."  (Pl.'s Opp'n 17.)  However, when Defendants

9    searched Plaintiff's car in 2008, the Supreme Court "interpreted the Fourth Amendment to

10   categorically permit an officer to search the passenger compartment of a vehicle incident to the lawful

11   arrest of a recent occupant of that vehicle."  *Brown v. Romeoville*, 2010 WL 431474, at *6 (N.D. Ill.

12   Feb. 1, 2010) (citing *Thorton v. United States*, 541 U.S. 615, 620–21 (2004); *New York v. Belton*, 453

13   U.S. 454, 460 (1981)).  And as the Supreme Court noted in *Gant*, "[b]ecause a broad reading of *Belton*

14   has been widely accepted, the doctrine of qualified immunity will shield officers from liability for

15   searches conducted in reasonable reliance on that understanding."  129 S. Ct. at 1722 n.11.

16           The Court has already determined Defendants had probable cause to arrest Plaintiff for

17   violation of section 85.10.  Relying on the "broad reading of *Belton*," Defendants searched Plaintiff's

18   car incident to arrest.  *Gant*, 129 S. Ct. at 1722 n.11.  Because the alleged unlawfulness of Defendants'

19   conduct was not clearly established at the time of the search, *see Ingram v. City of L.A.*, 331 F. App'x

20   462, 463 n.1 (9th Cir. 2009), Defendants are entitled to qualified immunity on Plaintiff's unlawful

21   search claim.

22           Almost as an afterthought, Plaintiff also contends that the search violated the Fourth

23   Amendment because Defendants searched Plaintiff's car twice, and "there was no justification or

24   probable cause for the second search of the car."  (Pl.'s Opp'n 17.)  Plaintiff cites no authority—nor

25   is the Court aware of any—for the proposition that Defendants could only search Plaintiff's car once

26   incident to his arrest.  Accordingly, this argument lacks merit.

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28       [11]  In *Gant*, the Supreme Court held that, incident to a lawful arrest, an officer may only "conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  129 S. Ct. at 1721.

1    No factual dispute exists regarding the circumstances surrounding Plaintiff's unlawful search

2    claim.  Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on this claim.

3    ### D.    *Malicious Prosecution*

4    Next, Defendants argue that they are entitled to summary judgment on Plaintiff's malicious

5    prosecution claim because "Plaintiff cannot establish all of the elements of the claim for malicious

6    prosecution under [§] 1983."  (Defs.' Mem. ISO MSJ 16; *accord* Defs.' Reply 8–9.)  Plaintiff,

7    however, contends that "the disputed facts preclude summary judgment on Plaintiff's malicious

8    prosecution claim."  (Pl.'s Opp'n 18.)

9    "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the

10   defendants prosecuted [him] with malice and without probable cause, and that they did so for the

11   purpose of denying [him] equal protection or another specific constitutional right.'"  *Lassiter*, 556

12   F.3d at 1054 (alterations in original) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th

13   Cir. 1995)); *accord Usher v. City of L.A.*, 828 F.2d 556, 561–62 (9th Cir. 1987).  However,

14   "[m]alicious prosecution, by itself, does not constitute a due process violation . . . ."  *Freeman*, 68 F.3d

15   at 1189; *cf. Albright v. Oliver*, 510 U.S. 266, 268 (1994) (plurality) (declining to recognize substantive

16   due process right to be free from criminal prosecution except upon probable cause).  "Malicious

17   prosecution actions are not limited to suits against prosecutors but may be brought, as here, against

18   other persons who have wrongfully caused the charges to be filed."  *Awabdy*, 368 F.3d at 1067 (citing

19   *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002)).

20   Here, Plaintiff seeks to hold Defendants liable for malicious prosecution because Defendants

21   allegedly filed "false police reports which [sic] caused Plaintiff to be falsely charged with criminal

22   violations and subjected to possible DMV sanctions."  (Compl. ¶ 18.)  This claim fails as a matter of

23   law because Plaintiff does not allege—let alone offer evidence—that Defendants prosecuted him "'for

24   the purpose of denying [him] equal protection or another specific constitutional right.'"  *Lassiter*, 556

25   F.3d at 1054 (alteration in original).  Rather, Plaintiff rests his malicious prosecution claim entirely

26   on the allegation that Defendants fabricated the evidence against him.  (*See* Pl.'s Opp'n 17–18.)  But

27   even assuming, *arguendo*, that Defendants fabricated the evidence against Plaintiff, that fact alone

28   would not suffice to make out a malicious prosecution claim under § 1983.  *See Awabdy*, 368 F.3d at

1069 ("[N]o substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause."); *Albright*, 510 U.S. at 268 (same).

No genuine issue of material fact exists regarding whether Defendants prosecuted Plaintiff for the purpose of depriving him of any constitutional right.   Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's malicious prosecution claim.

**2.     State Claims**

Plaintiff also alleges three state law claims.   First, Plaintiff claims that "Defendants were negligent and breached their duty of due care owed to Plaintiff."  (Compl. ¶ 23.)  Second, Plaintiff claims that he was falsely arrested and falsely imprisoned without probable cause, in violation of California law.  (Compl. ¶ 26.)  Third, Plaintiff claims that Defendants violated California Civil Code section 52.1.  (Compl. ¶ 30.)

*A.     Negligence*

Defendants contend that they are entitled to summary judgment on Plaintiff's negligence claim because they are immune from suits for negligence under California Government Code section 821.6 (section 821.6).  (Defs.' Mem. ISO MSJ 19–21; Defs.' Reply 9.)  Plaintiff, of course, disagrees.  (Pl.'s Opp'n 23–24.)

*(1)     California Government Code Section 821.6*

Under section 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6.  Section 821.6's "principal function is to provide relief from malicious prosecution."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 487–88 (9th Cir. 2007) (citing *Kayfetz v. California*, 203 Cal. Rptr. 33, 36 (Cal. Ct. App. 1984)).  But the section "also extends to actions taken in preparation for formal proceedings,"  *Amylou R. v. Cnty. of Riverside*, 34 Cal. Rptr. 2d 319, 321 (Cal. Ct. App. 1994), including actions "incidental to the investigation of . . . crimes,"  *id.* at 322.  Section 821.6 does not apply, however, to alleged tortious conduct that occurs during an arrest.  *See Blankenhorn*, 485 F.3d at 488 ("Here, the alleged tortious conduct occurred during an arrest, not an investigation. . . . [T]his is not the sort of conduct to which section 821.6 immunity has been held to apply."); *cf. Sullivan v. Cnty. of L.A.*, 527 P.2d 865, 870 (Cal.

1974) ("[T]he history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability only for Malicious prosecution and not for False imprisonment.").

Here, because Plaintiff's negligence claims are based on acts that allegedly happened during his arrest, not pursuant to an investigation into his guilt, section 821.6 does not confer immunity from those claims upon Defendants. This failure of immunity, however, does not end the Court's inquiry; rather, the Court must turn to the merits of Plaintiff's negligence claims.

*(2)    The Merits*

Plaintiff's complaint alleges that Defendants owed Plaintiff a duty of care, breached that duty, and caused Plaintiff injury. (Compl. ¶ 23.) The elements of a claim for negligence are (1) "a legal duty to use due care," (2) "a breach of such legal duty," and (3) "the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 911 P.2d 496, 498 (Cal. 1996) (internal quotation marks omitted). If probable cause supported an arrest, a negligence claim based on that arrest fails as a matter of law. *See Harvey v. City of Fresno*, 2010 WL 892114, at *14–15 (E.D. Cal. Mar. 9, 2010).

The Court has already determined that Defendants had probable cause to arrest Plaintiff. Accordingly, to the extent Plaintiff's negligence claim is based on his arrest, the claim fails as a matter of law.[12] *Id.* Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's negligence claim.

**B.    False Arrest**

Defendants next argue that they are entitled to summary judgment on Plaintiff's false arrest claim because it is barred by the statute of limitations and because probable cause supported Plaintiff's arrest. (Defs.' Mem. ISO MSJ 21–22; Defs.' Reply 9–10.) Plaintiff contends that this claim is timely. (Pl.'s Opp'n 20.)

"The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional

---

[12] Plaintiff also suggests that "a jury could find that Officer Dobbins was negligent when he checked the box and signed the form indicating he observed Plaintiff driving." (Pl.'s Opp'n 23.) However, section 821.6 affords public employees immunity against malicious prosecution claims, even if the employees act maliciously or without probable cause. Cal. Gov't Code § 821.6; *Blankenhorn*, 485 F.3d at 487–88. Absent contrary authority, the Plaintiff may not circumvent section 821.6 simply by styling what is clearly a malicious prosecution claim as a negligence claim. Accordingly, this aspect of Plaintiff's claim also fails as a matter of law.

confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 95 Cal. Rptr. 2d 316, 323 (Cal. Ct. App. 2000). "False arrest is not a different tort; it is merely 'one way of committing a false imprisonment.'" *Martinez v. City of L.A.*, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *Collins v. City & Cnty. of S.F.*, 123 Cal. Rptr. 525, 526 (Cal. Ct. App. 1975)). Whether a plaintiff's confinement pursuant to arrest was "without lawful privilege" depends on whether his arrest was lawful. *See* Cal. Pen. Code §§ 836.5(b), 847(b); *Moore v. City & Cnty. of S.F.*, 85 Cal. Rptr. 281, 284 (Cal. Ct. App. 1970) ("Imprisonment based upon a lawful arrest is not false, and is not actionable in tort."). "An arrest is valid if supported by probable cause." *People v. Kraft*, 5 P.3d 68, 103 (Cal. 2000).

A one-year statute of limitations applies to false imprisonment claims. Cal. Civ. Proc. Code § 340(c). "A cause of action for false arrest accrues on the arrest and is actionable immediately." *Mohlman v. City of Burbank*, 225 Cal. Rptr. 109, 110 n.1 (Cal. Ct. App. 1986).

Plaintiff's false arrest claim fails for two reasons. First, the Court has already determined that Defendants had probable cause to arrest Plaintiff for violation of section 85.10. Thus, Plaintiff's arrest was privileged, and his false arrest claim fails as a matter of law. *See* Cal. Pen. Code §§ 836.5(b), 847(b); *Kraft*, 5 P.3d at 103; *Moore*, 85 Cal. Rptr. at 284. Second, Plaintiff's false arrest claim is barred by the one-year statute of limitations applicable to false imprisonment claims. Plaintiff's arrest occurred—and his claim accrued—on April 20, 2008. (*See* Compl. ¶¶ 6, 8, 10; *Mohlman*, 225 Cal. Rptr. at 110 n.1.) Plaintiff filed his complaint on June 9, 2009, more than one year after his false arrest claim accrued. (*See* Compl.) Accordingly, this claim is also time-barred.[13]

No genuine issue of material fact exists regarding the facts underlying Plaintiff's false arrest claim. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on this claim. Concomitantly, Plaintiff's motion for partial summary judgment against Defendants on this claim is **DENIED**.

---

[13] Plaintiff contends that the Court should apply to Plaintiff's false arrest claim the two-year statute of limitations applicable to personal injury claims. (Pl.'s Opp'n 24; *see* Cal. Civ. Proc. Code § 335.1.) This contention lacks merit under California law. Plaintiff's false arrest claim simply is not a personal injury claim encompassed by California Civil Procedure Code section 335.1; rather, it is a false imprisonment claim encompassed by California Civil Procedure Code section 340(c). *See Collins*, 123 Cal. Rptr. at 526; *Moore*, 85 Cal. Rptr. at 284.

1    *C.      California Civil Code Section 52.1*

2          Finally, Defendants contend that they are entitled to summary judgment on Plaintiff's

3    California Civil Code section 52.1 (section 52.1) claim because Plaintiff "disavowed any threats,

4    intimidation[,] or coercion by [D]efendants."   (Defs. Mem. ISO MSJ 22; *accord* Reply 10.)

5    According to Plaintiff, however, "a jury could find that the officers here violated Plaintiff's rights by

6    intimidation or coercion."  (Pl.'s Opp'n 25.)

7          "California Civil Code [section] 52.1 provides that if a person interferes, or attempts to

8    interfere, by threats, intimidation, or coercion with the exercise or enjoyment of the constitutional or

9    statutory rights of any individual, the individual may sue for damages independently of any other

10   action that is available." *Xue Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010).  However, "[s]ection

11   52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages

12   as a result of constitutional violations." *Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1170 (9th Cir.

13   1996), *overruled on other grounds in Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997);

14   *accord Nelson v. City of Davis*, 709 F. Supp. 2d 978, 993 (E.D. Cal. 2010).  The existence of threats,

15   intimidation, or coercion is an essential element of a section 52.1 claim. *See Venegas v. Cnty. of L.A.*,

16   87 P.3d 1, 14 (Cal. 2004); *City & Cnty. of S.F. v. Ballard*, 39 Cal. Rptr. 3d 1, 21 (Cal. Ct. App. 2006)

17   ("Civil Code section 52.1 does '[require] an attempted or complete act of interference with a legal

18   right, accompanied by a form of coercion.'" (alteration in original) (quoting *Jones v. Kmart Corp.*, 949

19   P.2d 941, 943–44 (Cal. 1998))).

20         Like Plaintiff's false arrest claim, Plaintiff's section 52.1 claim fails for two reasons.  First,

21   the Court has already determined that the undisputed facts warrant summary judgment in Defendants'

22   favor on Plaintiff's constitutional claims.  Absent any underlying constitutional violations, Plaintiff's

23   section 52.1 claim fails as a matter of law. *See Sholtis v. City of Fresno*, 2009 WL 4030674, at *12

24   (E.D. Cal. Nov. 18, 2009) (dismissing section 52.1 claim in the absence of valid constitutional claims).

25   Second, as Defendants point out, Plaintiff has offered no evidence of any threats, intimidation, or

26   coercion by Defendants.  In fact, Plaintiff testified that Officer Dobbins was "professional" and that

27   nothing about his behavior was abusive in nature.  (Bulfer Dep. 88.)  Similarly, Plaintiff testified that

28   Corporal Garcia was cordial and in no way abusive.  (*Id.* at 90–91.)  Plaintiff did not interact with

Sergeant Isley.   (*Id.* at 91.)   Even assuming, *arguendo*, that Defendants violated Plaintiff's constitutional rights, no reasonable jury presented with these statements could return a verdict for Plaintiff on his section 52.1 claim.  *Anderson*, 477 U.S. at 248.

No genuine issue of material fact exists regarding the facts underlying Plaintiff's section 52.1 claim.  Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on this claim.

### CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' motion for summary judgment in its entirety.  Plaintiff's motion for partial summary judgment against Defendants is **DENIED**.  This Order concludes the litigation in this matter.  The Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

DATED:  February 7, 2011

Honorable Janis L. Sammartino
United States District Judge